UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-10064-CIV-KING
MAGISTRATE O'SULLIVAN

LOUISE COOK, as Personal Representative
of the Estate of Daniel F. Tessier and
JONATHAN TESSIER, a minor,

    Plaintiff,

vs.

RICK ROTH, as Sheriff of Monroe County,
Florida, and MONROE COUNTY, FLORIDA,

    Defendants.
_____/

## DEFENDANT SHERIFF'S MOTION IN LIMINE

  The Defendant, RICK ROTH, Sheriff of Monroe County, Florida, through his undersigned attorneys, pursuant to this Court's Order, files this his Motion in Limine and in support thereof states as follows:

  1. Plaintiff has brought this action stating claims of negligence and constitutional rights violations.

  2. Evidence of other suicides committed by persons in the custody of the Monroe County Sheriff's Office are not relevant to the Plaintiff's claims in this action.

  WHEREFORE, it is respectfully requested that this Honorable Court enter its Order granting Defendant Roth's Motion in Limine precluding the admission of any evidence of other suicides committed by persons in the custody of the Monroe County Sheriff's Office.

Further, and in support of this Motion in Limine, Defendant Roth refers this Honorable Court to the Memorandum of Law incorporated herein and by reference made a part hereof.

## MEMORANDUM OF LAW

Rule 402 of the Federal Rules of Evidence clearly sets forth that generally, relevant evidence is admissible, whereas evidence which is not relevant is not admissible. The Federal Rules of Evidence define relevant evidence as that evidence that has the tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. Fed.R.Evid. 401. Further, the rules set forth that even where such evidence may be relevant, it may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . .." Fed.R.Evid. 403.

The primary issue addressed by this motion concerns whether this Court should admit evidence of other suicides committed by persons in the custody of the Monroe County Sheriff's Office, and more specifically, the suicides of Charles Mosher, Larry Hounshell, Ralph Ogden, Jose Rincon, and Juan Farinas.

Any evidence of other suicides, specifically those mentioned above, is not relevant to the case at bar. Even if the Court were to determine that the evidence were relevant, submission of those other occurrence would unfairly prejudice the Defendant and confuse the issues presented to the jury in this matter.

Plaintiff in the present matter has brought three counts before this Court. The first two, Vicarious Liability for Negligence and Negligent Training, Supervision and Management, as their titles state, are based in negligence. The third count entitled Violation of 42 U.S.C. § 1983, stems from the allegation of a constitutional rights violation.

## CLAIMS OF NEGLIGENCE

There are many elements necessary to establish a negligence claim, such as duty, breach, causation, and damages. However for the determination of whether evidence of other suicides should be admissible in the present case, the primary element for consideration is that of causation. Under well established case law in Florida, "a defendant is not liable for injuries resulting to a plaintiff when there is an independent intervening cause, unless that independent intervening cause is a foreseeable and probable consequence of the wrongful actions of the defendant." Guice v. Enfinger, 389 So.2d 270, 271 (Fla. 1st DCA 1980) (citing Cone v. Inter-County Telephone and Telegraph Company, 40 So.2d 148, 149 (Fla. 1949). In Guice, a county jail inmate hung himself with his belt while he was incarcerated at the Santa Rosa County Jail. Id. at 271. The widow of the county jail inmate brought an action against the Santa Rosa County Sheriff alleging that through his negligence, the Sheriff was responsible for the decedent's suicide.

The circuit court in Guice granted summary judgment in favor of the defendant sheriff, finding the primary issue before the court to be "whether the negligence, if any, of the sheriff's office was the proximate cause of the deceased's death." Id. The trial court found that the inmate's suicide was an independent intervening cause of his death and granted summary judgment, which was upheld on appeal. Id.

In considering whether summary judgment was appropriate, the appellate court specifically considered whether the inmate's suicide was "sufficiently foreseeable to impose upon the sheriff's employees the duty to remove the deceased's belt." Id. The court considered the past actions of the inmate, the present behavior of the inmate, and the inmate's conditions of confinement. Id. Through consideration of these facts, the Court of Appeals upheld the lower court's decision that the inmate's

suicide was not a probable consequence of the defendant sheriff's negligence and was not foreseeable, therefore the sheriff had no liability.

Florida courts consistently look to the specific conduct of an inmate, the circumstances of his confinement, and the actions or inactions of the defendant sheriff when making the determination of whether the inmate's suicide is an independent and efficient intervening cause such that negligence is not actionable. Schmelz v. Sheriff of Monroe County, 624 So.2d 298 (Fla. 3rd DCA 1993) (where the court looked specifically to whether the deceased arrestee had ever threatened, attempted, or even talked about suicide, the knowledge that the detention deputies had of the arrestee, the detention deputies' observations of the arrestee's demeanor during incarceration, and the actions of the detention deputies as a result); Hutchinson v. Miller, 548 So.2d 883 (Fla. 5th DCA 1999) (where the court looked to the knowledge of the detention deputies of the detainee's emotional state and their actions and inactions as a result).

In Schmelz, an arrestee suffered severe brain damage after he attempted suicide while in the custody of the Monroe County Sheriff's Office. The circuit court entered summary judgment in favor of the defendant sheriff finding that the arrestee's attempted suicide while incarcerated was independent, intervening, and unforeseeable and therefore the defendant sheriff was not liable. Schmelz, 624 So.2d at 298. In overruling the circuit court's decision, the Court of Appeals considered whether the arrestee had ever threatened, attempted, or even talked about suicide. Id. at 299. Further, the Court of Appeals looked to the actual knowledge that the booking officer had of the arrestee's prior incarcerations as well as the arrestee's demeanor during the current incarceration. Id. Lastly, the court looked to the specific actions, or lack thereof, taken by the detention officers as a result of those observations. Id.

In Hutchinson, a juvenile detainee committed suicide while being held in the Brevard County Jail. The circuit court entered summary judgment in favor of the sheriff and deputies. Hutchinson, 548 So.2d at 884. The Court of Appeals reversed the entry of summary judgment finding that there existed a genuine issue of material fact. Id. Specifically, the court considered evidence specific to the detainee's incarceration looking to his behavior while confined, the repeated harassment of the detainee by other persons incarcerated, and the specific actions of the detention deputies in response to the circumstances. Id. at 884-85. In reversing the entry of summary judgment, the court held that whether the sheriff was negligent in failing to protect the decedent, "and whether the harm which befell him, albeit at his own hand, was within the scope of such negligent conduct so as to make such harm reasonably foreseeable under the facts . . . , [were] issues for the trier of fact." Id. at 885.

It is clear that when determining whether a sheriff's alleged negligent conduct resulted in the inevitable suicide of a person in his custody, the relevant evidence pertains to the specific conduct of the decedent, the particular circumstances surrounding his confinement, and the resulting actions or inactions of the sheriff. As such, the evidence of other persons in the custody of the Defendant Sheriff, their conduct while confined, the particular conditions and circumstances surrounding their confinement, and the resulting actions or inactions of the sheriff in their particular instances are not relevant as they do not add probative value as to whether the Defendant Sheriff was negligent, or responsible, in the instant case.

In order to establish a claim based in negligence, the Plaintiff must prove that although the decedent's taking of his own life was a new, independent, and efficient intervening cause of his death, that intervening cause was foreseen or reasonably might have been foreseen by the Sheriff. Schmelz, 624 So.2d at 298. Other instances of suicide committed by persons in the custody of the Monroe

County Sheriff's Office have no value whatsoever in the determination of whether the Sheriff, or his deputies, actually foresaw or reasonably should have foreseen that the decedent in the instant matter was suicidal. If such instances of other suicides, or suicidal attempts, were held to place the Sheriff on notice of all future suicides or suicide attempts such a precedent would have the effect of creating strict liability upon the Sheriff for any and all suicides or suicide attempts by persons within his custody, regardless of the particular circumstances and events surrounding each specific instance.

Even if this Court were to find that such evidence would be relevant, its value would be *de minimus* while unfairly confusing the issues before the jury and creating an unfair prejudice against the Defendant Sheriff in the minds of the jurors.

## CIVIL RIGHTS CLAIMS

In Count III, Plaintiff alleges that the suicide by the decedent came about because the Defendant Sheriff "maintained a policy, custom and habit of providing inadequate medical and psychiatric care to inmates of the Monroe County Detention Center . . ." and that he "acted with intentional, deliberate indifference to the serious medical and mental health care needs of inmates, including decedent, Daniel Tessier."[1] Plaintiff further alleges that the Sheriff failed "to adopt, implement, and continue appropriate policies and practices . . ." and failed to "properly and adequately train detention facility staff . . ."[2]

It is well settled that a governmental entity is not liable for the actions of its employees under Title 42 U.S.C. § 1983 by operation of the concept of respondeat superior/vicarious liability. Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978). In order to hold a government entity

---

[1] See ¶ 36 of the Second Amended Complaint.

[2] See ¶ 38 of the Second Amended Complaint.

responsible for the actions of its employees, there must be proof that the entity caused the violation. Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397 (1997). There are two circumstances in which a governmental entity can be liable for a constitutional violation committed by its employees: first, when a constitutional deprivation results from employees carrying out an expressed policy of the governmental entity; and second, when a constitutional deprivation results from employees following a custom or practice of the governmental entity. Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991).

A policy is defined as a formal rule or understanding that establishes set plans of action to be followed by employees in a particular circumstance consistently over time. Pendaur v. City of Cincinnati, 106 S.Ct. 1292 (1986)** (FIND US CITE). In this case, the Plaintiff has failed to plead or present any evidence that the claimed constitutional deprivation is related to such a formal or promulgated policy.

Absent an allegation that the constitutional injuries were caused by an official policy or by a final policy maker, the only way in which a plaintiff may successfully establish a claim against the Sheriff is upon proof that the injuries were caused by a custom. A custom, for purposes of analysis of civil rights claims, is a persistent and widespread or permanent and well settled practice. Monell, 436 U.S. at 691. A single occurrence of a constitutional violation by a nonpolicymaking employee or employees does not amount to a custom nor is it sufficient to make out a claim of liability. City of Oklahoma v. Tuttle, 471 U.S. 808 (1985); Depew v. City of Saint Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986).

As the threshold question, prior to the Plaintiff proving that a particular custom or practice allegedly caused injuries to the decedent, the Plaintiff must identify the alleged custom in question.

In the present matter, the Plaintiff has failed to allege, identify, or produce any evidence of such a particular custom. Notwithstanding the foregoing, even if a particular custom were identified, the Plaintiff must show that the alleged custom actually caused the alleged constitutional violation. Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397 (1997). In other words, the Plaintiff must prove that the decedent suffered a constitutional deprivation as a result of a specified custom, when considered in light of the particular circumstances surrounding the decedent's incarceration as well as the alleged actions or inactions of the Sheriff and his personnel.

Other instances of persons in the custody of the Monroe County Sheriff's Office committing suicide, without some commonality to the circumstances or events, do not make the existence of a particular custom any more or less probable than it would be without such evidence. Nor does such evidence further establish that a custom was the cause of the decedent's suicide in the present matter. In the instant case, the other suicides discussed below share no common thread which serves to tie them to the particular circumstances of the present action. A brief summary of the other suicides at issue follows:

Larry Hounshell committed suicide while in the Monroe County Jail on December 29, 1997. Mr. Hounshell had been arrested for petit theft and resisting arrest. He had a couple of prior arrests during the incarcerations during which he was placed on suicide watch in the Monroe County Jail. At the time of his suicide, Mr. Hounshell had been incarcerated less than a day and had not yet been booked and was being detained in a holding cell at the jail intake. Mr. Hounshell committed suicide by hanging himself from a phone cord attached to a phone placed in the holding cell where he was housed.

Ralph Ogden committed suicide while in the Monroe County Jail on September 25, 1998 at approximately 8:15 a.m. while being housed in holding cell #2 at the jail intake. Like Hounshell, Mr. Ogden had not yet been booked and had only been in the facility for about two hours before his suicide. Mr. Ogden had been arrested on several prior occasions, resulting in incarcerations of varying lengths. His prior arrests stemmed from domestic disputes with his then ex-wife, possession of a controlled substance, and trespassing. Mr. Ogden was known to be a drug user. At the time of his suicide he was located in a holding cell in the booking department. Mr. Ogden hung himself by using his underwear and wrapping the underwear around a corner of a pipe chase door in the cell.

Juan Farinas committed suicide while in the Monroe County Jail on November 8, 1999 at 10:00 a.m. Mr. Farinas had been arrested and was incarcerated under the charge of murder. Mr. Farinas had been incarcerated less than a month during which time he had been placed on suicide watch several times. Just prior to his suicide he had been returned from suicide watch after being cleared by the medical professionals. Mr. Farinas screening information indicated that he had prior thoughts of suicide and suicidal tendencies. He received medical treatment during his incarceration. Mr. Farinas was housed in the Alpha Unit at the time of his suicide. Mr. Farinas hung himself in his cell by using a bed sheet and attaching it to the bed.

Jose Rincon committed suicide while in the Monroe County Jail on November 24, 1999 between 2:50-2:55 p.m. Mr. Rincon had no prior arrests, but was currently incarcerated under the charge of possession of an illegal substance with intent to distribute. Mr. Rincon had been incarcerated for over three months. Mr. Rincon stated that he had thought about suicide but his screening information was completed with no indicators of suicidal tendencies. Mr. Rincon had a

bunk mate at the time of his suicide. He had just returned from medical consultation. His demeanor was observed as normal and calm. He was not under suicide watch. He asked his bunk mate to give him privacy to use the restroom and when his bunk mate returned, Mr. Rincon was found to have hung himself from an air conditioner duck with his shoelace. Mr. Rincon was housed in Unit D at the time of his suicide.

As is evident from a cursory review of the pertinent facts related to the other suicides, each set of circumstances, including those surrounding the case at bar, are factually distinguishable. It is apparent that no commonality exists between the separate instances. The suicides were committed at varying times of day, after different lengths of incarceration. The inmates, arrestees and detainees had been incarcerated for a multitude of reasons, some with criminal histories, others without. Some inmates had presented suicidal indicators whereas others did not. Some of the inmates had received medical treatment whereas some of the inmates had not. Some of the decedents exhibited an agitated and excited demeanor whereas others appeared to behave normally and remain calm. Each suicide was committed in different locations within the facility, and different cells. Some of the decedents had been on suicide watch whereas some had not. Most importantly, no common custom can be identified which links any of the suicides with a specific causal chain.

Each of the suicides at issue that they are factually dissimilar, and thus provide no probative value with regard to establishing a widespread and persistent or permanent and well settled practice as required by Monell.

Evidence of the other suicides committed by persons in the custody of the Monroe County Sheriff's Office are not relevant to the Plaintiff's claims in this action and therefore should not be admitted. However, to the extent that this Court would find that the evidence is relevant, their value

is *de minimus* and would unfairly confuse the issues before the jury and create an unfair prejudice against the Defendant in the minds of the jurors. This Motion in Limine should be granted.

**I HEREBY CERTIFY** that a copy of the foregoing was mailed this 24th day of March, 2003, to: ROBERT ADER, Esquire, attorney for Plaintiff, Bank of America Tower, 100 S.E. 2nd Street, Suite 3550, Miami, Florida 33131.

> PURDY, JOLLY & GIUFFREDA, P.A.
> Attorneys for Defendant SHERIFF
> 1322 S.E. Third Avenue
> Fort Lauderdale, Florida 33316
> Telephone (954) 462-3200
> Telecopier (954) 462-3861
>
> BY: _____
>    JOHN L. WRIGHT
>    Florida Bar No. 0192236
>
> And
>
> BY _____
>    BRUCE W. JOLLY
>    Florida Bar No. 203637