UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 02-10064-CIV-KING/O'SULLIVAN



LOUISE COOK, as Personal Representative
of the Estate of Daniel F. Tessier, and
JONATHAN TESSIER, a minor,

      Plaintiffs,

vs.

RICK ROTH, as Sheriff of Monroe County,
Florida,

      Defendant.
_____/

### PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER TENTATIVELY GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY AND GRANTING DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF OTHER SUICIDES

      Plaintiffs, LOUISE COOK, as Personal Representative of the Estate of Daniel F. Tessier ("Deceased"), and JONATHAN TESSIER, the minor son of Deceased, by and through undersigned counsel, pursuant to applicable rules of procedure, hereby file their Motion for Reconsideration of Order dated May 29, 2003 (DE # 41), and in support thereof, state as follows:

      1.    On May 29, 2003, this Court issued its Order ("Order"): (1) tentatively granting Defendants' motion to exclude expert testimony, and (2) granting Defendant's motion to preclude evidence of other suicides within the Monroe County Detention Center ("MCDC").

      2.    With great deference to this Court, Plaintiffs now most respectfully request reconsideration of the Court's Order. As will be demonstrated more fully herein, under the facts of our case, as well as the legal claims upon which this case is grounded, expert testimony is warranted, and evidence of other suicides should be allowed.



## MEMORANDUM

The Court has unquestioned power to correct, modify or reverse its previous Orders. See, E.g., Fisher v. National R.R. Passenger Corp., 152 F.R.D. 145, 149 (S.D. Ind. 1993); Dempsey v. National Enquirer, 702 F.Supp. 927 (D. Me. 1988) (holding that interest of justice standard "affords the court wide discretion."); McKethan v. Texas Farm Bureau, 996 F.2d 734, 738 (5th Cir. 1993), cert. denied, 114 S.Ct. 694 (1994) (court is free to reverse its decision "for any reason it deems sufficient").

### 1. Evidence of Other Suicides Should Be Allowed

In disallowing evidence of the five other suicides by hanging within the detention facility, the Court ruled: "This record is devoid of evidence showing that the previous suicides would be relevant to Defendant's ability to foresee the suicide of Plaintiffs' decedent or Defendant's complete indifference to the decedent." Order at 3.

#### a. Negligence

With respect to Plaintiffs' negligence claims (Counts I and II), as a matter of law, the previous suicides are relevant in determining Defendant's ability to foresee Daniel Tessier's suicide.[1] In a nutshell, the other suicides (certainly those prior to Tessier's) put Defendant on

---

[1] One element of a negligence claim is the tortfeasor's actual or implied knowledge of the subject condition. Jackson v. H.L. Bouton Co., Inc., 630 So.2d 1173, 1176 (Fla. 1st DCA 1994) (citing Carter v. Hector Supply Co., 128 So.2d 390 (Fla. 1961)). See also, Fazio v. Dania Jai-Alai Palace, Inc., 473 So.2d 1345, 1348 (Fla. 4th DCA 1985) ("circumstantial evidence of recurring or ongoing problems, which could have resulted from [negligence], is admissible as relevant to the issue of foreseeability"). Similar or recurring incidents are admissible for the purpose of showing an on-going problem or condition, defendant's knowledge thereof, and the failure to take reasonable precautions. Frazier v. Otis Elevator Co., 645 So.2d 100, 101 (Fla. 3d DCA 1994); Rodriguez v. Loxahatchee Groves Water Control Mgmt. District, 636 So.2d 1348, 1349 (Fla. 4th DCA 1994). Defendant's actions/inactions within the context of the other suicides demonstrates his generalized business practice or habit as regards the detection and prevention of suicides in general, and is thus admissible. Newberry Square Development Corp. v. Southern

notice of a recurring problem within the facility: lack of, or inadequate, training in suicide detection and prevention. Despite being put on notice of the on-going problem of suicide, and the disproportionately high suicide rate in MCDC (in comparison with that of other detention facilities), Defendant failed to implement adequate training measures and properly supervise and manage detention facility personnel, which, had they done so, could have prevented Tessier's suicide.

Prior instances of suicide are certainly probative of the degree of knowledge held by detention facility personnel of a defect in their system. Additionally, other suicides demonstrate that the Sheriff (and/or his deputies) conducted this aspect of his business in a certain routine fashion, and serve as proof that the operational procedures of the Defendant continued to cause a dangerous condition. As such, this evidence is relevant to Defendant's foreseeability of a dangerous condition and Defendant's lack of response thereto.

b.  **Civil Rights**

With the utmost respect, Plaintiffs submit that, in making its ruling, perhaps the Court has misunderstood the nature of Plaintiffs constitutional claim—perhaps Plaintiffs failed to sufficiently clarify their claim. Plaintiffs' § 1983 claim (Count III) does not accuse Defendant of being deliberately indifferent toward Daniel Tessier, *per se*. Nor do Plaintiffs need allege such in order to bring their claim, for deliberate indifference need not be pointedly directed or intentionally intended for an individual plaintiff. Deliberate indifference can be shown by "continued adherence to an approach that [policymakers] know or should know has failed to prevent tortious conduct" or by "the existence of a pattern of tortious conduct by inadequately trained employees." Board of County Com'rs v. Brown, 117 S.Ct. 1382, 1390-91 (1997). Where

---

Landmark, Inc., 578 So.2d 750, 752 (Fla. 1st DCA 1991) (evidence admissible where such reflects the "totality of circumstances").

3

the failure or inadequacy of training or supervision stems from policy, and results in a constitutional harm, liability under § 1983 may be found. City of Canton v. Harris, 109 S.Ct. 1197 (1989).[2]

Instances of other suicides within the facility are *indeed* relevant to demonstrate Defendant's complete indifference toward the decedent *as an inmate of the MCDC*. Plaintiffs refer to their response memorandum (pp. 4-6) wherein they have set forth an abundance of case law, directly on point, stating that not only is evidence of other suicides relevant, it is *essential* to Plaintiffs' constitutional claim, where Plaintiffs' cause attacks a policy.[3]

Evidence of recurrent situations *are* demonstrative of the fact that Defendant has been put on notice of the need for better training, supervision and management of facility personnel, and better inner-facility policies, practices and procedures in detecting, deterring and preventing inmate suicide, yet despite being put on notice, Defendant intentionally chose not to take action. Evidence of other suicides tends to demonstrate a strong likelihood that suicide would continue

---

[2] In their Response memorandum (at pp. 4-5), Plaintiffs state:
> Plaintiffs assert their § 1983 claim against the Sheriff, alleging a policy or pattern of deliberate indifference in failing to promulgate adequate procedures with which to assess, predict and prevent inner-facility suicides, and that the Sheriff's failure to adequately train, supervise and manage detention personnel in this regard evidenced a deliberate indifference to the rights of inmates, and caused decedent constitutional harm.

[3] Both the failure to promulgate and the inadequacy of training/supervision form a basis for § 1983 liability where it is shown that the policy-maker is on notice of the need to promulgate policy or train/supervise in a particular area in order to ensure a constitutional right is not violated. In order to prove such a claim, a plaintiff must demonstrate that the defendant "knew or should have known" of a particular need, yet failed to take action. Tennant v. Florida, 111 F.Supp.2d 1326, 1332 (S.D. Fla. 2000) (citing Board of County Com'rs v. Brown, 117 S.Ct. 1382, 1390-91 (1997). Without notice of a need to train, supervise or implement adequate policy in a particular area, a policy-maker cannot, as a matter of law, be held liable. See, e.g., Wright v. Sheppard, 919 F.2d 665 (11th Cir. 1990) (liability not found where no evidence of history of similar acts to show notice); Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994) (noting the need for proof of knowledge of prior similar incident); Popham v. City of Talladega, 908 F.2d 1561 (11th Cir. 1990) (no liability where no pattern of incidences shown to put defendant on notice of the need to train).

to result if Defendant did not take appropriate action in establishing policies, practices and procedures, including better training, supervision and management of detention facility personnel. Defendant's continual adherence to an approach that he knew, or should have known, failed to prevent inner-facility suicide establishes a *pattern* of negligence, thus demonstrating Defendant's deliberate indifference to inmates', including Daniel Tessier, life.[4]

Plaintiffs also respectfully ask the Court to reconsider its distinction of Greason v. Kemp, 891 F.2d 829 (11th Cir. 1990). As in Greason, MCDC officials *were* aware of "the severe lack of staff members capable of providing psychiatric care to the inmates." Id. at 837. Like Greason, prison officials were aware of the previous suicides and that they occurred under extremely similar circumstances and close in time to that of the subject decedent. Similar to Greason, nothing at the facility was changed to prevent the same thing from happening over and again. *Unlike* Greason, our facts relate **six** (not one) other suicides within a twenty-three month period, all by hanging, all where inmates were left alone, despite the fact that most had exhibited some form of recognized suicidology, and where none were afforded adequate psychological counseling; indeed, MCDC provided inmates a total of only four (4) hours of mental health care per week (the Greason prison allowed 6 ½). And, unlike Greason, the MCDC had a comparatively high suicide rate.

---

[4] Young v. City of Augusta, Georgia, 59 F.3d 1160, 1172 (11th Cir. 1995) ("the need for more or better training may be obvious where a pattern of constitutional violations exists such that the municipality knows or should know that corrective measures are needed"); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("systemic deficiencies can provide the basis for a finding of deliberate indifference"); Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) ("A series of incidents closely related in time may disclose a pattern of conduct amounting to deliberate indifference."); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) ("deliberate indifference to inmates' health needs may be shown by proving repeated examples of negligent acts which disclose a pattern of conduct"). "[E]vidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." Allen v. Muskogee, Okla., 119 F.3d 837, 842 (10th Cir. 1997).

*In keeping with* their custom/practice of disregarding suicide risk factors, MCDC personnel turned a blind eye to Tessier's three written requests for psychiatric help, failed to provide him psychological assistance per his express request, segregated him from general prison population, and did not keep a suicide watch on him. Testimony from detention facility personnel indicates that they did acknowledge that Tessier was exhibiting indicators of suicidal intent, but that they, nonetheless, did nothing.

Defendant was responsible for ensuring that all services at the MCDC were properly provided. Defendant was aware of inadequacy of mental health services provided to inmates, including understaffing and its attendant problems, and was familiar with prior incidents in which inmates committed suicide after exhibiting signs of suicidal tendencies and actually requesting—but not receiving—help. Nevertheless, Defendant failed to take adequate measures to cure the serious problems of which he was aware; he was thus deliberately indifferent to Daniel Tessier's constitutional right to psychiatric care. Defendant's complete indifference to known or obvious consequences is manifested through vastly similar incidents which establish a persistent problem with respect to the facility's general policy, custom or habit of leaving suicidal inmates alone, disregarding express requests for help, failing to act upon suicide indicators, providing an inadequate 4 hours per week of psychological counseling, failing to adequately train, manage and supervise personnel.

### 2. Plaintiffs' Expert Should Be Allowed to Testify

In tentatively striking Plaintiffs' expert, the Court stated: "Thus, the expert is precluded from testifying until such time as Plaintiffs present other evidence, besides inadequacies in the screening process, which give rise to a strong likelihood of deliberate indifference on the part of Defendant." Order at 2. As stated above, Plaintiffs can, and will, present evidence other than

6

adequacy in the screening process to establish deliberate indifference. However, because counsel for the Defendant argued the exclusion of only *some* expert testimony, the undersigned addressed only those arguments posed.[5] For the record, as stated in Plaintiffs' expert witness summary, his deposition, and Plaintiffs Response memorandum, Dr. Ronald Maris is offered to testify as to much more than Defendant's inadequate suicide screening methods.

Dr. Maris will testify as to the reasonableness of Defendant's policies and procedures (and their implementation) regarding suicide risk assessment, detection and prevention, the adequacy of mental health care services provided inmates, and the sufficiency of training, supervision and management of detention facility personnel. Maris is additionally offered to testify regarding Defendant's gross departure from accepted industry standards of care for inmates in detention facilities. Moreover, Dr. Maris hopes to testify as to MCDC's disproportionately high suicide rate as compared to other detention facilities, general principles of suicidology and incarcerated individuals' increased propensity to commit suicide. Dr. Maris will speak to Daniel Tessier's proclivity toward suicide and the substantial risk of danger to himself he exhibited.[6]

Whether Defendants' conduct actually constituted deliberate indifference and was causally related to the violation of the decedent's constitutional rights is a factually intensive question that will likely require exploration by an expert witness at trial. See Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986); Smith v. Jenkins, 919 F.2d 90, 93-94 (8th Cir. 1990);

---

[5] Defendant presented only four grounds upon which he sought limitation/exclusion of expert testimony, one of which was the preclusion of opinion as to deficiencies in health care screening. Defendant did not ask that Plaintiffs' expert be stricken altogether.

[6] Contemporaneously with the subject Order, this Court issued its Order Denying Plaintiffs' Motion in Limine, thus allowing Defendant to assert his "affirmative defense" that Daniel Tessier's suicide was *unintentional*. Plaintiffs now ask the Court to allow expert testimony refuting the proffered defense, i.e., to state that, under the facts of this case, Daniel Tessier acted with intent to kill himself.

Card v. Miami-Dade County, 147 F.Supp.2d 1334, 1345-46 (S.D. Fla. 2001). Plaintiffs ask that they be able to establish Defendant's deliberate indifference with aid of an expert's specialized knowledge.[7]

WHEREFORE, based on the foregoing, Plaintiffs most respectfully request that this Honorable Court reconsider its May 29, 2003 Order, and allow expert witness testimony at trial, as well as evidence of other suicides.

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail this 4th day of June, 2003 to: Bruce W. Jolly, PURDY, JOLLY & GIUFFREDA, P.A., 1322 S.E. Third Avenue, Fort Lauderdale, Florida 33316.

> Respectfully submitted,
>
> LAW OFFICES OF ROBERT ADER, P.A.,
> Attorneys for Plaintiffs
> Bank of America Tower, Suite 3550
> 100 S.E. 2nd Street
> Miami, Florida 33131
> Telephone: (305) 371-6060
> Telefax: (305) 358-5917
>
> By: _____
> ELIZABETH B. HITT, ESQ.
> Florida Bar No. 017850

---

[7] The Court's Order appears to disallow expert testimony until Plaintiff has "established other evidence tending to show deliberate indifference on the part of the Defendant" Order at 3. While Plaintiffs read this as allowing expert testimony once they have laid a *factual* predicate (through other witnesses and/or documents), in an abundance of caution Plaintiffs request confirmation that they will be able to put Dr. Maris on the stand to discuss the foregoing matters. Additionally, in light of the Court's Order disallowing evidence of other suicides, to avoid skirmishes in front of the jury, Plaintiffs ask for clarification as to the extent to which Maris will be able to testify as to the circumstances surrounding the other suicides and the detention facilities' suicide rate.