UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-10064-CIV-KING/O'SULLIVAN

LOUISE COOK, as Personal Representative
of the Estate of Daniel F. Tessier and
JONATHAN TESSIER, a minor,

        Plaintiff,

vs.

RICK ROTH, as Sheriff of Monroe County,
Florida, and MONROE COUNTY, FLORIDA,

        Defendants.

_____/

### DEFENDANT SHERIFF'S MEMORANDUM OF LAW OPPOSING PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER TENTATIVELY GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY AND GRANTING DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF OTHER SUICIDES

The Defendant, RICK ROTH, Sheriff of Monroe County, Florida, through his undersigned attorneys, pursuant to Rule 7.1.C of the General Rules for the United States District Court, Southern District of Florida, files this his Memorandum of Law Opposing Plaintiff's Motion for Reconsideration of Order Tentatively Granting Defendant's Motion in Limine to Exclude Expert Testimony and Granting Defendant's Motion in Limine to Preclude Evidence of Other Suicides and in support thereof would state as follows:

On May 29, 2003, this Honorable Court entered its Order Tentatively Granting Defendant's Motion in Limine to Exclude Expert Testimony and Granting Defendant's Motion in Limine to Preclude Evidence of Other Suicides. By the entry of that Order this



Court resolved the Sheriff's claims, contained in the two Motions in Limine separately filed on behalf of the Sheriff.

Plaintiff, in filing her Motion for Reconsideration makes the following claims:

1. That evidence of other suicides is relevant on the claim for negligent wrongful death;

2. That evidence of other suicides is relevant to demonstrate a violation of the decedent's civil rights;

3. That testimony of the expert witness is relevant to establishing a basis for imposition of liability against the Sheriff on the civil rights claim.

In support of her argument Plaintiff makes various statements of fact, which are erroneous and not supported by the record, and conclusions of law which are erroneous. For those reasons, and as otherwise suggested in this Memorandum, the Motion for Reconsideration should be denied.

## AVAILABILITY OF MOTION FOR RECONSIDERATION AS REMEDY

The Defendant Sheriff concedes that this Court retains the power to modify or rescind the Order at issue since it is an interlocutory Order issued before entry of Final Judgment. Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir. 1970); Greene v. J.C Penney Life Insurance Company, 23 F.Supp.2d 1351 (M.D. Fla. 1997).

## EVIDENCE OF OTHER SUICIDES SHOULD NOT BE ALLOWED

### A. As to Negligent Claim for Wrongful Death

Plaintiff suggests that evidence of other suicides in the Monroe County Jail should be admitted as relevant to determining whether Tessier's suicide was foreseeable. In

support of that contention the Plaintiff suggests that since there were other suicides, that the Sheriff was on notice that there was a "problem" in the facility. However, Plaintiff does not more particularly describe the "problem", and does not specify as to how that "problem" translates into an awareness that Tessier, specifically, posed a risk of suicide. It is the continued refusal by Plaintiff to recognize that distinction that is at the root of their misguided attempt to have this Court overturn its decision.

First, Plaintiff suggests that the fact that there were other suicides in the Monroe County Jail ipso facto demonstrates some kind of systemic failing. Plaintiff suggests that the failing <u>must</u> relate to training or supervision. That contention is not supported by any evidentiary showing as to the agency training or protocols for management/supervision notwithstanding ample opportunity to conduct discovery in those areas. In the absence of any actual evidentiary support for the suggested link, it was appropriate for this court to determine that the evidence of other suicides was irrelevant especially where the Defendant made a factual showing that each of the suicides was factually distinct.

Plaintiff continues to suggest that since other suicides occurred in the Monroe County Jail, that there must be a defect in the system, and that the Sheriff must have known of that defect. Plaintiff has yet, to this point, to submit or suggest any evidence as to the defect about which she complains. If the deputies were improperly or inadequately trained, what was it about that training that was inadequate, and how, if at all, did that cause the Tessier suicide (or the other suicides)? That question needs to be asked and answered. Plaintiff ignores the question, and has no evidence to answer the question. If jail supervision or training was somehow inadequate, Plaintiff needed to specify and

specifically link those asserted deficiencies to the Tessier incident and the other suicides before evidence of the other suicides is admissible as relevant.

Plaintiff continues to suggest that since other suicides have occurred in the Monroe County Jail that the Sheriff must have known of a "dangerous condition" in the jail. Although the Defendant Sheriff can concede that the jail operated under his authority can be a dangerous place, and, more specifically, that inmates might desire to commit suicide, that an incident occurs or an inmate commits suicide does not automatically translate to liability.

That the decedent caused his own death requires a somewhat more narrowly focused inquiry on the issue of foreseeability than Plaintiff would propose. Suicides in a jail are generally foreseeable. If that fact alone established the standard for determining negligence, a jailer would always be liable where an inmate took his own life. However, as jail suicide litigation has evolved, the focus of the inquiry is not whether suicides have ever occurred, or whether they can occur, but whether the specific inmate at issue had demonstrated indications for suicide, the risk for which should have appreciated by the jailer, and was not. The inquiry necessarily is inmate specific. Without conceding that there is any similarity between the other Monroe County Jail suicides and the decedent's suicide, that other suicides occurred is not relevant in that it does not make the existence of any fact that is of consequence to the determination of this lawsuit more probable that it would be without the evidence. By definition evidence of other suicides is not relevant in this litigation and does not tend to prove the fact issue of whether decedent's own behavior put the Sheriff on notice as to the extent to which he was at risk for suicide.

Plaintiff seems to suggest that systemic problems in ascertaining that inmates generally are at risk for suicide is sufficient to impose liability. That assertion is simply incorrect. Liability can properly be imposed against a jailer in a wrongful death claim involving an inmate suicide only after specifically analyzing the decedent's conduct and not the conduct of other inmates.

### B. As to Civil Rights Claim for Deliberate Indifference to Serious Medical Needs

Plaintiff again misstates the principles of law applicable to analysis of her claims. Plaintiff suggests, in her Motion, that the Court has misunderstood her constitutional claim to be one for deliberate indifference when it is not her intention to proceed on such a theory. Instead, Plaintiff suggests that it is her intention to proceed on a theory that the training, supervision, and management of the jail facility is inadequate as evidenced by other suicides.

There are two basic flaws in Plaintiff's reasoning: first, and as was argued in the Defendant's Motion in Limine, the standard by which this civil rights claim is to be evaluated is deliberate indifference. Farmer v. Brennan, 114 S.Ct. 1970 (1994) at 1979. Plaintiff in her Motion attempts to bypass that fundamental and preliminary inquiry. Plaintiff appears to be attempting to prove the underlying violation by methods typically used to prove institutional liability for that underlying violation. Proving that there were other suicides does not demonstrate that the Defendant was deliberately indifferent to this specific decedent's serious medical needs.

Plaintiff contends that since there were other suicides, there necessarily must be a systemic failing in jail operations. Plaintiff again supplies no evidentiary support for the

described failings, and fails to articulate in her Motion or by way of supporting evidence any specific deficiency, or how that alleged deficiency is linked to a failure to prevent the decedent's act of taking his own life. Plaintiff suggests that the Defendant Sheriff's policies or practices are somehow deficient, but never articulates how. Plaintiff suggests that the occurrence of several suicides put the Sheriff "on notice of the need for better training, supervision and management of facility personnel", but does not indicate how that would be accomplished, or what should have been different, or how a difference in training or management would somehow have prevented this decedent from taking his own life. Plaintiff suggests in her Motion that recurring suicides establishes a pattern of negligence. That pattern is not otherwise defined. In the absence of any factual link between the suicides, that several suicides occurred are indicative of nothing other than that several suicides occurred. No other relevant inference can be drawn. As the Defendant Sheriff originally demonstrated in the Motion in Limine that there is no common factual thread between the suicides, except that they occurred in the jail, evidence of other suicides does not demonstrate deliberate indifference to this decedent's civil rights, and is properly excluded.

## EXCLUDING EXPERT WITNESS TESTIMONY

Plaintiff suggests that Dr. Maris should be permitted to testify as to inadequacies in the screening process. Plaintiff additionally suggests that Dr. Maris has other opinions which are relevant to the claim.

Dr. Maris's deposition was filed as an attachment to the Defendant Sheriff's Notice of Filing bearing certificate of mailing of March 21, 2003. Previously the written opinion of

-6-

Dr. Maris had been submitted as an attachment to the Notice of Filing Plaintiff's Expert Witness Report filed by the Plaintiff under certificate of mailing of March 10, 2003.

In Defendant Roth's Motion in Limine to Exclude/Limit Expert Witness Testimony, the Defendant sought to preclude Plaintiff's retained expert from rendering opinions as follows:

    1. That the Defendant Sheriff exhibited deliberate indifference to the decedent's serious medical needs;

    2. That the Defendant Sheriff committed medical malpractice;

    3. That the health care screening procedures in place in the jail were deficient;

    4. That detention staff failed to understand the import of an inmate request form that had been submitted by the decedent to jail staff.

It was the Sheriff's contention in the Motion in Limine that the opinions contained in the retained expert's report were not relevant and did not aid the trier of fact or, alternatively, they intrude on the jury's function, and, for that reason, are not admissible.

The Defendant Sheriff understands that this court, in granting the Defendant Roth's Motion in Limine to Exclude Expert Testimony, determined that the underlying basis for the opinions of the retained expert witness does not have a foundation in demonstrated fact or principles of law applicable to this litigation.

The Defendant Sheriff in his Trial Memorandum and in his Motion in Limine has provided to this Court his view of how this litigation should proceed, and what evidence is admissible to prove any issues of fact which are disputed. It remains the Sheriff's

contention that the theories upon which Plaintiff can even attempt to proceed in this litigation are limited; specifically, the Sheriff contends that the Florida Medical Malpractice Act precludes pursuit by Plaintiff of a claim for medical negligence, that sovereign immunity bars any claim based upon improper implementation of jail procedures, and that there is <u>no evidence</u> to support any claim that the Sheriff was deliberately indifferent to this specific inmate's serious medical needs. To the extent that Plaintiff's retained expert has opinions in those areas, the Defendant Sheriff has previously demonstrated that those opinions are either insubstantial or belied by demonstrated fact or applicable legal principles. Dr. Maris's general opinions as to "suicideology" or "industry standards" are not relevant to the underlying and core issue of whether, in this instance, detention staff knew of the decedent's suicidal ideation, and deliberately ignored the attendant risk. In fact, Dr. Maris concedes in his deposition that his review of the evidence did not permit a conclusion by him that any detention or medical staff person actually believed that decedent posed a risk of suicide, or was contemplating suicide.[1] In the absence of any such indication, any other supposed institutional failing is secondary, and cannot be used to contrive a non-existent underlying constitutional violation.

## CONCLUSION

Plaintiff has failed to demonstrate a legal basis for reconsideration by this court of the Order Tentatively Granting Defendant's Motion in Limine to Exclude Expert Testimony

---

[1] Maris deposition, Pg. 73, Lines 8-15, 17-23.

and Granting Defendant's Motion in Limine to Preclude Evidence of Other Suicides. Plaintiff's Motion for Reconsideration should, properly, be denied.

**I HEREBY CERTIFY** that a copy of the foregoing was mailed this 17th day of June, 2003, to: ROBERT ADER, Esquire, attorney for Plaintiff, Bank of America Tower, 100 S.E. 2nd Street, Suite 3550, Miami, Florida 33131.

> PURDY, JOLLY & GIUFFREDA, P.A.
> Attorneys for Defendant SHERIFF
> 1322 S.E. Third Avenue
> Fort Lauderdale, Florida 33316
> Telephone (954) 462-3200
> Telecopier (954) 462-3861
>
> BY_____
> BRUCE W. JOLLY
> Fla. Bar No. 203637